IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DAVID PERRY,<br><br>       Plaintiff,<br><br>vs.<br><br>FIRSTKEY HOMES, LLC; FIRSTKEY HOMES MANAGEMENT OF GEORGIA, LLC; FIRSTKEY HOMES MANAGEMENT OF ILLINOIS, LLC; FIRSTKEY HOMES MANAGEMENT, LLC; FIRSTKEY HOMES OF GEORGIA, LLC; and FIRSTKEY HOMES OF ILLINOIS, LLC,<br><br>       Defendants. | Civil Case No. _____ |

# Exhibit B – Renewal Verified Complaint

1

ID# 2024-0053494-CV
EFILED IN OFFICE
CLERK OF SUPERIOR COURT
COBB COUNTY, GEORGIA

**24102953**

D. Victor Reynolds - 69
APR 21, 2024 10:42 AM

Connie Taylor, Clerk of Superior Court
Cobb County, Georgia

IN THE SUPERIOR COURT OF COBB COUNTY

STATE OF GEORGIA

| | |
|---|---|
| DAVID PERRY, | |
| Plaintiff, | CIVIL ACTION FILE NO. _____ |
| v. | |
| FIRSTKEY HOMES, LLC, <br> FIRSTKEY HOMES MANAGEMENT OF GEORGIA, LLC, <br> FIRSTKEY HOMES MANAGEMENT OF ILLINOIS, LLC, <br> FIRSTKEY HOMES MANAGEMENT, LLC, <br> FIRSTKEY HOMES OF GEORGIA, LLC, <br> FIRSTKEY HOMES OF ILLINOIS, LLC, | JURY TRIAL DEMANDED |
| Defendants. | |

**RENEWAL VERIFIED COMPLAINT FOR DEFAMATION, BREACH OF CONTRACT, CONVERSION, UNJUST ENRICHMENT & INJUNCTION**

COMES NOW Plaintiff by and through counsel and hereby renews the prior action, Civil Action File No. **23109407** as transferred to The United States District Court Civl Action File No. 1:24-cv-00082-ELR-JSA, pursuant to O.C.G.A. § 9-2-61 and § 9-11-41 and hereby states as follows:

I.  **PROCEDURAL POSTURE**

1. This action stems from a prior action listed above that was filed in the Superior Court of Cobb County, then was transferred to the United States District Court.

2. Said prior action was subsequently dismissed without prejudice pursuant to Fed. R. Civ. P. 41(a)(1)(A)i on or about January 15, 2024.

3. The prior action and all claims contained within it were brought within the applicable statutes of limitation respectively.

4. This action was brought within six (6) months of the date of dismissal of the prior action.

5. This action is hereby renewed pursuant to O.C.G.A. § 9-2-61 and 9-11-41, and as such is brought to this court *de novo*.

## II. SERVICE, JURISDICTION AND VENUE

6. Plaintiff is a resident of the State of Georgia.

7. Defendants, FirstKey Homes, LLC (FirstKey), A Deleware Limited Liability Company, FirstKey Homes Management of Georgia, LLC (FHMG), FirstKey Homes Management of Illinois, LLC (FHMI), FirstKey Homes Management, LLC (FHM), FirstKey Homes of Georgia (FHG), FirstKey Homes of Illinois, LLC (FHI), (Collectively, "Defendants FirstKey"), are all foreign limited liability companies doing business in the State of Georgia with a principal office located at 875 THIRD AVE 10FL, New York, NY, 10022.

8. Each of the Defendants owns or has an interest in real property in Georgia, and does business in Georgia.

9. Jurisdiction is proper under OCGA § 9-10-91(1)(4).

10. All of said FirstKey defendants have a registered agent in the State of Georgia known as CT Corporation Systems. Each said FirstKey defendant can be served process at the said agent's address located at 289 S Culver St, Lawrenceville, GA, 30046-4805.

11. This is the proper jurisdiction and venue for each FirstKey defendant in this action.

12. This is the proper jurisdiction and venue for all Defendants in this action.

### III.   FACTUAL BACKGROUND

13. In April of 2020 Plaintiff entered a twelve (12) month residential lease with each of the Defendants FirstKey jointly and severally. (Exhibit A)
14. With said lease Plaintiff paid $1,981.25 as a security deposit to be held in escrow, which was to be returned to Plaintiff after move-out if Plaintiff returned all keys and other required items and left the premises in "good like condition" to the date he first entered the lease. (Exhibit A).
15. Said lease pertained to his occupancy and residency at 6080 Jonathan Trace Canton, GA 30115.
16. Said lease automatically renewed at the end of its 1-year term on April 12 of each subsequent year, unless Plaintiff provided proper notice of intent to vacate the premises sixty (60) days prior to the termination of the lease.
17. Plaintiff renewed this twelve (12) month lease for two consecutive lease terms. The first was from April of 2020 to April 12, 2021, and the second lasted from April 12, 2021, to April 12, 2022.
18. Plaintiff provided notice of his intent to move out of the residence more than sixty days prior to the termination of the lease by phone in or about January 2022. ( Exhibit B)
19. Defendants FirstKey acknowledged said notice as valid according to email dated March 22, 2022, wherein a representative agent of Defendants FirstKey, Caroline Sell, Property Administrator stated:

    a. That they accepted the date of notice on the first date Plaintiff orally communicated his intent to move out in satisfaction of the sixty (60) day notice requirement of the lease; (See Exhibit B)

    b. That because notice of intent to vacate was timely and validly made, Plaintiff's final month's rent was to be prorated to April 12, 2022 for an amount of $658.00; (Exhibit

20. Subsequently, Plaintiff cancelled his utilities that provided service to the property in writing with said cut-off to begin April 12, 2022.(See Exhibit C)

21. Plaintiff moved out on April 12, 2022.

22. Upon information and belief no inspection or walkthrough of the property was conducted post move-out.

23. Upon information and belief no inspection or walkthrough report has been generated related to this property post move-out.

24. Plaintiff states that the property remained vacant for at least six months following his move-out as he drove past the property on frequent occasions going to and from work, and from the outside the building was unoccupied and had not been touched since his move-out.

25. Subsequently, Defendants FirstKey assessed monthly rent and sent Plaintiff notices of rent due and accruing every month.

26. Defendants FirstKey would call and send emails dunning Plaintiff repeatedly. (Exhibit D)

27. Plaintiff responded to FirstKey multiple times, informing them that the rent they were assessed against him was incorrect as he had validly terminated his lease.

28. Plaintiff was given a Move-out Statement from Defendants FirstKey that showed that an assessment of around $7,432.00 allegedly owed in back rent. (Exhibit E)

29. The move-out statement also showed the application of Plaintiff's security deposit to said assessment leaving an amount of $5,451.00 in wrongfully accrued past due rent.

30. On April 10, 2023, Plaintiff applied for a home loan with Affinity Home Lending.

31. Upon receipt of his credit report, on or about April 10, 2023, Plaintiff found out that he had a middle credit score of 597.

32. Upon investigation, information and belief, at that time, there were no lenders who would provide residential mortgages to applicants with scores as low as those found on Plaintiff's Credit Report.

33. Upon investigation, information and belief, Plaintiff's credit report also had no other reported blemishes that would negatively affect his credit score.

34. According to the information on said credit report, Defendant FirstKey published the falsely alleged amount of $5,451.00 in past due rent to a debt collector known as National Credit Systems, Inc. (NCSI) on or about February of 2023.

35. According to the information on said credit report, NCSI reported said alleged amount to the credit bureaus in March of 2023.

36. Upon application for the home loan, Plaintiff learned that at that time that he would be unable to secure lending to purchase a home as upon investigation, information and belief no lender at that time had policies in place to allow lending to people in Plaintiff's credit score range.

37. Plaintiff learned further that he would only be able to obtain a loan by having the information removed from his credit either by getting Defendants to remove the falsely reported information from the credit history or by paying the amount claimed due.

38. Plaintiff does not owe the money reported. As such, numerous times Plaintiff had requested Defendants to remove the false debt from his credit report.

39. Despite these requests, Defendants FirstKey refused to honor the amendment to the lease and the agreed-upon final rent due in the amount of $658.00.

40. Defendants' FirstKey's conduct is the proximate and actual cause of liquidated damages to Plaintiff.

### IV.   CAUSES OF ACTION

### COUNT ONE – DEFAMATION

#### Defendants FirstKey

41. Defendants FirstKey acted independently to publish false information to NCSI causing said information to be reported to the credit bureaus.

42. Defendant FirstKey's communications concerning Plaintiff were not privileged.

43. Defendants FirstKey knew or should have known that the information they published about Plaintiff was false.

44. Defendants FirstKey negligently, recklessly, or intentionally published the information in that Defendants FirstKey knew the information was false and publication of such would cause harm to Plaintiff that was:

    c. Reasonably foreseeable;

    d. A substantial and unjustifiable risk; or

    e. Intended to be the eventual result.

45. In publishing the false information regarding Plaintiff, FirstKey actually and proximately caused special damages to Plaintiff.

46. Defendants FirstKey independently and in concert caused such damages as determined by the enlightened conscience of an impartial jury, but in no event shall said damages be less than $1,000.00.

## COUNT TWO – BREACH OF CONTRACT

47. Defendants FirstKey individually and in concert had a contract that modified the lease validly pursuant to email dated March 10, 2022.

48. Said modification terminated the Lease and prorated rent to $658.00 as of April 12, 2022.

49. Defendants FirstKey individually and in concert ignored the promises made and proceeded to assess rent against Plaintiff beyond the agreed termination date of April 12, 2022 in violation of the contract between the parties.

50. Defendants' independent and joint failure to fully perform their contractual obligations has caused Plaintiff actual and consequential damages, including attorneys' fees and other expenses.

51. Defendants FirstKey, individually and in concert, breached the contract between the parties and thereby actually and proximately caused defendant to suffer compensatory and consequential damages in the amount of as determined by the enlightened conscience of an impartial jury.

## COUNT THREE – CONVERSION

52. Defendants FirstKey had possession of a security deposit of $1981.25 which belonged to the Plaintiff.

53. Said deposit was held in trust and was to be returned to Plaintiff upon termination of the lease, the return of the keys and other items listed in the lease in good condition, and return of the premises in "like condition" as that which was in existence at the time the parties entered the lease.

54. Plaintiff complied with all requirements of the lease to entitle him to the return of his security deposit.

55. Defendants FirstKey, individually and in concert, failed to return the security deposit.

56. Defendants FirstKey, individually and in concert, converted the security deposit funds in their possession by applying the funds to the falsely alleged past due rent.

57. Said application was for Defendants FirstKeys' benefit and to the detriment of Plaintiff.

58. Defendants FirstKey are jointly and severally liable to Plaintiff for the tort of Conversion for the amount of the security deposit taken, and such further damages as may be determined by the enlightened conscience of an impartial jury.

### COUNT FOUR – UNJUST ENRICHMENT AND INJUNCTION

59. Plaintiff shows this court that he is without adequate remedy at law.

60. It would be inequitable to force Plaintiff to pay the amounts alleged to be owed.

61. Plaintiff cannot purchase a home without having this wrongfully alleged debt removed from his credit report. Defendants would benefit by being awarded thousands of dollars to which they have no right.

62. Such would wrongfully inure to the benefit of Defendants and to the detriment of Plaintiff in violation of all notions of fair play and substantial justice.

63. As Plaintiff has no adequate remedy at law, plaintiff hereby calls upon the equitable powers of this Honorable Court to affirmatively enjoin the Defendants in this action to remove the falsely alleged debts from his credit history.

64. Defendants FirstKey, independently and in concert, retained possession of Plaintiff' security deposit of $1,981.25 even under promise and reasonable expectation that said deposit would be returned.

65. Defendants FirstKey were independently and in concert unjustly enriched by the wrongfully assessed rent and retention of Plaintiff's security deposit.

66. Alternatively, Plaintiff is entitled to an award of restitution in the amount of $7,432.00, or that amount as determined by the enlightened conscience of an impartial trier of fact.

## COUNT FIVE – ATTORNEY'S FEES AND EXPENSES OF LITIGATION

67. Defendants were jointly and severally stubbornly litigious, have unnecessarily expanded the scope of this litigation.

68. Defendants have each initiated and maintained positions that lack substantial justification, and that are utterly vexatious and frivolous as such present no issues of justiciable law or fact.

69. Defendants have engaged in bad faith in their conduct throughout the transactions that form the subject matter of this complaint.

70. Pursuant to O.C.G.A. §§ 9-15-14 and 13-6-11 and otherwise Plaintiff is entitled to an award of reasonable attorney's fees and expenses to be taxed jointly and severally against the Defendants in this action.

71. Defendant's wrongful conduct in this action has caused unnecessary trouble and expense such that the Plaintiffs are entitled to recover their expenses of litigation including

reasonable attorney's fees from the Defendants pursuant to O.C.G.A. § 13-6-11 and other applicable law.

## COUNT SIX – PUNITIVE DAMAGES

72. Defendants' joint and several actions surrounding this litigation are indicative of willful misconduct, malice, fraud, wantonness, oppression, or, at the very least, an entire want of care. In any case, Defendants' actions raise a presumption of their conscious indifference for the consequences of their conduct.

73. Therefore, the Plaintiffs specifically pray this Court to allow an award of punitive damages to deter Defendant's joint and several unlawful conducts in the future according to O.C.G.A. § 51-12-5.1.

WHEREFORE, Plaintiff prays that this Court grants Plaintiff the following relief:

    f. Trial by Jury;
    g. Compensatory, Actual, Special, General, and Consequential Damages in that amount as determined by the enlightened conscience of an impartial jury;
    h. Restitution of $7,432.00, or that amount as determined by the trier of fact;
    i. Punitive damages in an amount necessary to deter the conduct of Defendants;
    j. Affirmative Injunction commanding Defendants to remove the false information from Plaintiff's Credit Report;
    k. A reasonable award of attorney's fees and costs of litigation;
    l. Statutory Interest against the principal amount of any award granted by the trier of fact; and
    m. Such further relief the court deems just and proper under the circumstances.

Respectfully submitted this 21[th] day of April 2024

*(Signatures on the following page)*

/s/ Bruce W. Baggarly
Bruce Baggarly, Esq.
Attorney for Plaintiff
Georgia Bar No. 031150
Baggarly & Associates, LLC
965 Piedmont Rd., NE, Suite 115
Marietta, Ga. 30066
bruce@baggarlylaw.com
770-874-1625

/s/ Ted Silverbach
Ted Silverbach, Esq.
Attorney for Plaintiff
Georgia Bar No. 214078
Silverbach Law, P.C.
P.O. Box 589
Acworth, Georgia 30101
Ted@silverbachlaw.net
470-515-4918